# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

USA                                        **CRIMINAL ACTION**

**VERSUS**                                 **NO. 16-37-LMA-KWR-1**

**JOSE ANDRES MEJIA-DUARTE**

### ORDER and REASONS REGARDING DETENTION HEARING

The defendant, Jose Andres Mejia-Duarte ("Mr. Mejia-Duarte"), has been in federal custody since January 28, 2016 when he was picked up by Immigration and Customs Enforcement ("ICE"), Office of Enforcement and Removal Operations.  The Complaint alleges that Mr. Mejia-Duarte is in violation of Title 8 U.S.C. § 1326(a) regarding re-entry of removed aliens.  As further alleged in the complaint, Mr. Mejia-Duarte was previously removed from the United States by order of an Immigration Judge on August 31, 1993 and was arrested a second time in July, 2001 and then removed from the United States on July 19, 2001.  According to the Complaint, Mr. Mejia-Duarte has not legally re-entered the United States.

An initial pretrial bail report was issued by the Pretrial Services Section of the U.S. Probation Office on February 25, 2016.  (Rec. doc. 5).  The detention hearing was held before the undersigned on March 10, 2016.  Probation Officer James Lamy testified that it was the recommendation of his office that Mr. Mejia-Duarte be detained.  Since the time of the initial interview, Pretrial Services had the opportunity to interview Mr. Mejia-Duarte and gained further information regarding his background, ties to the community and employment history.  Mr. Lamy testified that he did not consider Mr. Mejia-Duarte to be a danger to the community, but he did consider him to be a flight risk because of the threat of incarceration and deportation due to his illegal immigration status.

According to the Pretrial Services report, Mr. Mejia-Duarte underwent deportation proceedings and was ordered removed by an Immigration Judge and, on August 31, 1993, was removed from the country.  In 1995 and 1998 he was arrested and convicted of driving while intoxicated.  In 2001, Mr. Mejia-Duarte was arrested on an immigration violation and removed to Honduras on July 19, 2001.  He has had no other criminal record until the current proceeding. Except for approximately one year when he lived in Houston, he has resided in southeast Louisiana continuously.

At the detention hearing, counsel for Mr. Mejia-Duarte introduced Exhibit D-1 *in globo* consisting of 9 affidavits of persons supporting the pretrial release of Mr. Mejia-Duarte; a letter in support of Mr. Mejia-Duarte from his church; mental health evaluations of Mr. Mejia-Duarte's three oldest children; psychological evaluations of Mr. Mejia-Duarte's oldest child and wife; Tulane Medical Center records with regard to Lessy Vasquez, Mr. Mejia-Duarte's wife (who has recently given birth to a baby boy); and a notice of entry of appearance as attorney before the Department of Homeland Security by Miriam Crespo on behalf of Mr. Mejia-Duarte.

Nine affidavits were filed in support of the pretrial release of Mr. Mejia-Duarte.  They are summarized as follows:

1. Gustavo Garcia is a legal permanent resident of the United States and works with his brother as a contractor.  He has known Mr. Mejia-Duarte since around the time of Hurricane Katrina.  Mr. Mejia-Duarte has rented property from Mr. Garcia located in Gretna and has always paid his rent and utilities on time and takes good care of the property. Mr. Mejia-Duarte has worked for Mr. Garcia's company and he has been a good worker.

2. Gloria Garcia is a naturalized citizen and the wife of Gustavo Garcia.  She has known Mr. Mejia-Duarte since around the time of Hurricane Katrina and he has worked for her

husband's construction company.  She describes him as a "hard worker and a good father."
Ms. Garcia describes Mr. Mejia-Duarte as "extremely hard working and has diligently
worked to assure that his children, his daughter and his step children have a brighter
future."

3.  Jose Francisco Garcia is a legal permanent resident of the United States since 1986.  He
and his brother, Gustavo, run a contracting business.  Mr. Mejia-Duarte worked for that
business starting around the time of Hurricane Katrina.  He describes Mr. Mejia-Duarte as
"trustworthy and responsible."  "Jose is a good friend, worker, husband, and father."

4.  Beatriz Olvera is a United States citizen who lives in Covington.  Mr. Mejia-Duarte was a
tenant for about a year.  She stated that "Jose is very respectful, responsible, and very hard
working; when Jose lived on our grounds he was always on top of his work in making sure
the property was taken care of; if it was one thing I learned about Jose in the time he lived
with us, it was that he was very devoted to his church."

5.  Felix Robert Keating lives next door to Jose Francisco in Covington, Louisiana and knows
Mr. Mejia-Duarte who lived on Francisco's ranch for approximately one year.  He stated
that "Jose is a good man…. He is hard-working.  Any time Paco needed something done
around the ranch Jose would work on fixing it."

6.  Odili Sosa serves as the Secretary of the Grace Baptist Church in Covington, Louisiana.
She knows Mr. Mejia-Duarte from church which he has attended for quite some time.  She
states that "Mr. Mejia-Duarte is a good person.  He is not a trouble maker.  He comes to
church.  He always comes with his family and his children."

7.  Zoila Coronado is the wife of Felip Coronado, Pastor of Grace Baptist Church.  She has
known Jose Mejia and his family for about 4 years, having met at church.  She states that

"Jose is an excellent father and husband.  He is a brother of our church and he is involved and volunteers whenever necessary."

8. Olga Lidia Timoteo met Mr. Mejia-Duarte and his family through church.  She states that "Jose is a very serious and conservative man.  He is very dedicated to his family and our church."

9. Jose Jorge Vargas has known Mr. Mejia-Duarte since the summer of 2015 through the church.  He considers him to be a good friend.  "He is very nice and humble.  He is hard-working and I know he works very hard."

Each[1] of these people appeared at the detention hearing and affirmed that if called to testify they would testify in accord with their affidavits.  Also appearing at the hearing was Felipe Coronado, the Director of Grace Baptist Church in Folsom, Louisiana.  Pastor Coronado submitted a letter in support of Mr. Mejia-Duarte signed by 20 members of the church.  He also testified that he was willing to post a personal surety bond in the amount of $20,000 to assist Mr. Mejia-Duarte in the event that he could be released.

Mr. Mejia-Duarte's counsel filed a "Memorandum Regarding Interplay Between Immigration Detainer and the Bail Reform Act" on March 15, 2016.  Rec. doc. 18.  Counsel points out that the Bail Reform Act ("BRA") provides for consideration of pretrial release for non-citizens:

> **(d) Temporary detention to permit revocation of conditional release, deportation or exclusion.** – If the judicial officer determines that –
>
> (1)      such person -- …
>
> (B)      is not a citizen of the United States or lawfully admitted for permanent residence …; and

---

[1] Except for Gustavo Garcia who was unable to attend the hearing.

>   (2)      such person may flee or pose a danger to any other person or the community;
>
>   such judicial officer shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service.  If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.

18 U.S.C. § 3142(d).  It is thus clear that, after the provisions of Section 3142(d) are applied, the other provisions of the BRA are applicable to consideration of whether a non-citizen qualifies for pretrial release.  Thus, non-citizens do qualify for pretrial release under the BRA.  The BRA "simply requires temporary detention and giving of notice by the court to immigration officials so that they can investigate and determine whether they wish to pursue filing a detainer against the alien defendant.  18 U.S.C. § 3142(d)(1)(B)."  U.S. v. Montoya-Vasquez, 2009 WL 103596, at *5 (D. Neb. June 13, 2009).

An ICE detainer does not change the analysis.  Such a detainer does not allow me to "disregard the congressionally-mandated provisions of the BRA by keeping a person in detention for the purpose of delivering him to trial when the BRA itself does not authorize such pretrial detention."  U.S. v. Trujillo-Alvarez, 900 F. Supp. 2d 1167, 1178 (D. Or. 2012); U.S. v. Blas, 2013 WL 5317228, at *6 (S.D. Ala. Sept. 20, 2013).  An ICE detainer, which is in place in this case, is merely a request by the Department of Homeland Security to have another agency who has custody of an alien to notify it so that it can arrange to assume custody prior to release.  The request is to maintain custody of the person for a period not to exceed 48 hours.  See, 8 C.F.R. § 287.7(d).[2]  As

---

[2] The 48 hour period excludes Saturdays, Sunday, and holidays.

the Government points out in its brief, filed on March 18, 2016 (rec. doc. 20), the undersigned may consider the ICE detainer when considering the factors to be evaluated under the BRA.  U.S. v. Salas-Urenas, 430 F. App'x 721, 723 (10th Cir. 2011); U.S. v. Neves, 11 F. App'x 6, 8 (1st Cir. 2001).

A similar case was recently decided by District Judge Milazzo.  In United States v. Lenin Gonzalez-Reyes, 16 CR 28 (E.D.La. 2/23/16), the defendant had lived in the area for three years, was gainfully employed and had significant contacts in the community as evidenced by five individuals who appeared at his detention hearing to speak on his behalf.  Magistrate Judge Knowles, based on a Pretrial Services recommendation, granted pretrial release.  The Government filed a motion with the district court for revocation of the release order.  Judge Milazzo denied the motion noting that "the Government bears the burden of proving that he is a flight risk and that no other less restrictive conditions could reasonably assure his presence at trial."  Rec. doc. 24 at p. 2.

Despite the fact that Pretrial Services did not originally recommended that Mr. Mejia-Duarte be released on bond, I find that his situation is comparable to that of Mr. Gonzalez-Reyes. Both defendants had members of the community appear at their detention hearing to testify on their behalf and to demonstrate their significant contacts in the community.[3]  If anything, Mr. Mejia-Duarte has longer and deeper contacts with the community than did Mr. Gonzalez-Reyes. I understand Probation's concerns regarding the ICE detainer, but as discussed above that is just one factor to be considered.  I find that Mr. Mejia-Duarte's contacts with the community to be an over-riding factor in consideration of conditions of release pending trial.

---

[3] Mr. Mejia-Duarte did have two DUI convictions 20 and 18 years ago.  But his Pretrial Risk Assessment Risk Score was calculated at a 6 while the other defendant for whom bond was recommended had a higher Risk Score of 7.

Plaintiff has a wife, an infant son, two stepsons and a daughter in the community.  Those relationships are incentives for him to stay, rather than flee.  I find that Mr. Mejia-Duarte does not present a serious risk of flight or a danger to the community if he is released pending trial.  There are, therefore, conditions which can be imposed which will reasonably assure his appearance as required.  18 U.S.C. § 3142(c)(B).

Accordingly, I hereby order as follows:

That the defendant, Jose Andres Mejia-Duarte, be released under the following conditions:

- $50,000 personal surety bond[4]

- Submit to supervision by the U.S. Probation Office

- Travel restricted to the Eastern District of Louisiana

- Home detention with GPS monitoring

- No use of alcohol

- Submit to alcohol testing if required by the U.S. Probation Officer

- No use of illegal drugs

- Upon the approval of an Immigration Court, continue or actively seek employment

- Do not possess a firearm, destructive device or other weapon

- Surrender any passport to the case agent during the pendency of the criminal proceedings

- Do not obtain a passport or other international travel documents

- Report every contact with any law enforcement personnel to U.S. Probation.

New Orleans, Louisiana, this 4th day of April, 2016.

_____
SALLY SHUSHAN
U.S. Magistrate Judge

---

[4] I specifically find that a higher financial condition would result in the defendant's pretrial detention which would violate 18 U.S.C. § 3142(c)(B)(2).